UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

21 DROPS, LLC,                                         Case No. 21-21960-MAM
                                                                        Chapter 11

       Debtor.
_____/

**MINORITY OWNERS' MOTION TO DISMISS
FOR LACK OF GOOD AND FOR RELATED RELIEF**

Movants, Cary Caster, in her capacity as trustee of the Richard F. Caster 2009 Irrevocable Trust dated January 26, 2009, Lana Caster in her capacity as trustee of Richard Caster Family 2007 Irrevocable Trust dated December 13, 2007, and Richard Caster, in his capacity as trustee of the Cary M. Caster 2010 Irrevocable Trust dated June 23, 2010 (collectively, the "**Movants**" or "**Minority Owners**"), file this motion to dismiss this case commenced by Kavita Shai (the "**Insider**") on behalf of the Debtor 21 Drops, LLC (the "**Debtor**") and for other relief, and, in support, state as follows:

**INTRODUCTION**

The Debtor has essentially admitted in its pre-petition correspondence, filings and in open court that it commenced this bankruptcy case and a related adversary proceeding against the Minority Owners as a litigation tactic relating to a dispute between its members that a Florida state court held can only be litigated in a Delaware court. The Debtor has no significant non-insider third-party debt. There was no pre-petition pressure from creditors to collect against the Debtor. There is no business to reorganize in this Chapter 11. As this case was filed in bad faith and is otherwise improper, the Court should dismiss it with prejudice and award bankruptcy-related legal fees to the Movants against the Debtor, its counsel, and the Insider, jointly and severally.

1

## FACTUAL AND PROCEDURAL BACKGROUND

1. The Debtor has been in the business of manufacturing essential oil-based products for natural wellness.[1]

2. It is a Delaware limited liability company. Its members are the Minority Owners (35%), the Insider (14.7%), and Turtle Tail, LLC (51%).[2]

   A. The Debtor's Unsuccessful Prior Florida Lawsuit

3. On October 21, 2020, the Debtor, the Insider, and Turtle Tail, LLC (collectively, the "**Debtor Litigants**") commenced a civil action against the Minority Owners by filing a complaint in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida ("**State Court Action**"), which was assigned case number 502020CA011481XXXXMB. A true and accurate copy of the complaint is attached hereto as **Exhibit A**.

4. The Debtor Litigants, which were represented by the law firm seeking to represent the Debtor in this bankruptcy case, alleged in the state court complaint that:

   a. the Insider had acquired ownership of the majority owner, Turtle Tail, including its voting rights;

   b. the Insider subsequently exercised complete control over the Debtor, attempted to sell the Debtor, and sent a related notice to the Minority Owners purporting to trigger certain sale-related procedures set forth in the Debtor's operating agreement (a copy of which is attached to the state court complaint as Exhibit 1);

   c. the Minority Owners disputed the Insider's authority under the Debtor's operating agreement to have wrested control of the Debtor from them; and

   d. the Minority Owners allegedly owed $32,000 to the Debtor on account of prior approved distributions.

5. The Debtor Litigants sought declaratory relief in the State Court Action that its

---

[1] *See* D.E. 10, p. 1.
[2] *See* D.E. 15-1, p. 34; D.E. 31, p. 3.

2

purported takeover of the Debtor and subsequent sale notice were valid. The Debtor Litigants contended that such relief would entitle them to recover at least $32,000.

6. The Minority Owners successfully moved to dismiss the State Court Action with prejudice based on the existence of mandatory Delaware forum-selection provisions in the Debtor's operating agreement. A true and accurate copy of such dismissal order is attached hereto as **Exhibit B.**

7. The Debtor Litigants have never commenced an action in a Delaware court to seek the relief sought in the Florida State Court Action.

B.      The Debtor's Pre-Petition Threat to Forum-Shop Through Bankruptcy

8. Instead of proceeding to litigate its disputed claim only in Delaware as required, the Debtor Litigants continued to press their positions through post-dismissal demands and threats.

9. Of particular significance, the Debtor Litigants, through its counsel, threatened a bankruptcy filing to avoid having to litigate in Delaware and to try to deprive the Movants of the value of their ownership interests.[3] They did so through the following correspondence:

> If we cannot reach an agreement in any other way, my client is prepared to put the company into bankruptcy. It clearly has debts that currently exceed its assets. <u>If we do file bankruptcy, the entire company would come under the jurisdiction of the bankruptcy court. The bankruptcy court venue would be Palm Beach County, and that venue would supersede the venue provisions in the operating agreement</u>. Once in bankruptcy, whether in a Chapter 7 or a Chapter 11, all of the assets of the company would come under the jurisdiction of the bankruptcy court. Once in bankruptcy, 21 Drops or a bankruptcy trustee could file claims against the Casters for the monies that they received and the value of the property that Cary Caster took. I truly believe that the Casters would be better off trying to work with us rather than have a bankruptcy trustee coming after them. Additionally, <u>Ms. Sahai could buy the company from the bankruptcy trustee and would take 100% of the ownership</u>.
>
> (underlining added).

---

[3]     A true and accurate copy of such correspondence is attached hereto as **Exhibit C.**

10. Such threat made clear that the Debtor Litigants planned to put the Debtor into a Florida bankruptcy case to enable (a) them to circumvent the terms of the Debtor's operating agreement and ruling against them in the State Court Action; and (b) the Insider to acquire complete ownership of the Debtor's assets to the detriment of the Minority Owners.

11. Counsel for the Movants promptly responded that any such bankruptcy case would be commenced in bad faith and therefore subject to dismissal.[4]

12. Nonetheless, the Insider chose to file this case for the Debtor and subsequently filed an adversary proceeding seeking relief previously dismissed in the State Court Action.

C. The Debtor's Bankruptcy Filing

13. On December 23, 2021, the Insider filed on behalf of the Debtor a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").[5] Such filing occurred six months after the State Court Action was dismissed as improper forum-shopping.

14. The Debtor, in its Case Management Summary, states that the reason it filed for relief was because the Debtor was "[u]nable to make *[sic]* take a loan or run business due to a shareholder that is uncooperative *[sic]* and has not returned formulas or distribution to help pay debt. Supply chain disruption that led to excessive shipping costs."[6]

15. Aleida Martinez-Molina has been appointed to serve as the Subchapter V trustee.[7]

16. The Insider personally is funding the fees of the Debtor's proposed counsel.[8]

17. The Debtor's proposed counsel was counsel for the Insider as well as the Debtor in

---

[4] A true and accurate copy of related correspondence between counsel is attached hereto as **Exhibit D.**
[5] *See* D.E. 1.
[6] *See* D.E. 10 (underlining added)
[7] *See* D.E. 4.
[8] *See* D.E. 9.

4

the State Court Action.

18.     The Debtor claimed in its case management summary that its cash, inventory, and intellectual property were worth less than $32,000[9] (suspiciously the same amount as the debt the Debtor claimed in the State Court Action to be owed by the Minority Owners).

19.     However, in its bankruptcy schedules, the Debtor valued its assets at $143,700,[10] consisting of cash ($28,000), receivables ($22,000), inventory ($41,700), intellectual property ($2,000), and a nondescript "Uncategorized Asset" ($50,000).

20.     The Debtor also claimed in its case management summary that "the only creditor of the Debtor is the Executive Officer who has not been paid her salary for 2021 because of the financial situation of the Debtor."[11] However, the Debtor claimed elsewhere that such executive officer (i.e., the Insider) is owed $200,000 for a shareholder loan and $165,333 for accrued wages.[12]

21.     The Debtor scheduled $130,000 of the Insider's claim as a priority wage claim under 11 U.S. C. Section 507(a)(4),[13] even though the current statutory limit for a valid priority wage claim is only $13,650.[14]

---

[9]   *See* D.E. 25, p. 3.
[10]  *See* D.E. 18, p. 8.
[11]  *See* D.E. 17, p. 2.
[12]  *See* D.E. 31, p. 4.  The Debtor also scheduled a very small credit card debt.
[13]  *See* D.E. 18, p. 10.
[14]  That statute treats the following as fourth priority unsecured claims:
4) Fourth, allowed unsecured claims, but only to the extent of $10,000 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for—
(A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or
(B) sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor in the sale of goods or services for the debtor in the ordinary course of the debtor's business if, and only if, during the

22. The Debtor intends to liquidate and has proposed a Subchapter V Plan of Liquidation[15], wherein the Debtor expects that the only likely bidders for the Debtor's assets are its members[16] (e.g., the Insider, Turtle Tail, LLC and the Movants).

23. This Court dismissed the Debtor's bankruptcy case on January 7, 2022, for failure to comply with its disclosure obligations, and reinstated it on January 24, 2022.[17]

24. The Debtor failed to file its required initial case status report.

25. The Debtor has not attained approval from this Court to retain bankruptcy counsel, and the proposed counsel may have a conflict of interest due to prior representation of the Insider.[18]

26. The Debtor has made a material misrepresentation/omission regarding its financial condition. It filed a recent balance sheet reflecting an alleged $148,000 debt to Costco.[19] However, the Debtor's bankruptcy schedules reflect no such debt. The Insider denied the existence of such debt during the initial meeting of creditors. As a result, either the Debtor's balance sheet contains a material misrepresentation or the Debtor's schedules contain a material omission.

27. The Debtor has failed to file its January 2022 monthly operating report.

28. The Debtor's monthly operating reports for December 2022 and March 2022 reflect

---

12 months preceding that date, at least 75 percent of the amount that the individual or corporation earned by acting as an independent contractor in the sale of goods or services was earned from the debtor.
When the Debtor's petition was filed, the $10,000 limit referenced in the statute had been increased to $13,650. *See* Federal Register, Vol. 8, No. 29, p. 3488.

[15] *See* D.E. 17, p. 2 ("The Debtor intends to file a Chapter 11 Plan that will seek liquidation and sell-off of any assets of the Debtor."). For December 2021, the Debtor reported income of only $6,702.95, but expenses that included $33,333.34 for payroll. *See* D.E. 33-1, p. 9. The Debtor paid the Insider $100,000 during the year before the bankruptcy filing for an undisclosed reason. *See* D.E. 18, p. 16; D.E. 56.

[16] *See* D.E. 15, p. 2 ("If such a sale is held, it is anticipated that the only parties who would bid are the owners of the company.").

[17] *See* D.E. 13 & 26.

[18] *See* D.E. 61.

[19] *See* D.E. 19.

6

that the Debtor has negative cash flow and that the Insider's husband made a $2,000 payment for the Debtor, which the Debtor "has not reimbursed."[20]

        D.        <u>The Debtor's Forum-Shopping Adversary Proceeding</u>

29.        On February 7, 2022, the Debtor commenced an adversary proceeding against the Movants regarding the same $32,000 distribution that was the subject of the dismissed State Court Action.[21] That proceeding has been assigned case number 22-01048.

30.        The Debtor accuses the Movants in such proceeding of somehow violating the automatic stay imposed by 11 U.S.C. Section 362(a)(3) by not complying with the Debtor's disputed demand for payment.

31.        The Debtor failed to disclose in its adversary proceeding Complaint, however, that the United States Supreme Court has conclusively established that passive retention of alleged estate funds cannot violate Bankruptcy Code Section 362(a)(3). *See City of Chicago, Illinois v. Fulton*, 141 S. Ct. 585, 592 (2021).

## ANALYSIS

32.        A bankruptcy court possesses the authority to dismiss or convert a Chapter 11 for cause. *See* 11 U.S.C. Section 1112(b)(1). A debtor's lack of good faith in commencing a Chapter 11 case constitutes such cause. *See In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988); *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984); *accord In re State St. Houses, Inc.*, 356 F.3d 1345, 1347 (11th Cir. 2004).

33.        There is no particular test for determining whether a bankruptcy case has been commenced in bad faith. *Phoenix Piccadilly, Ltd.*, 849 F.2d at 1394. A court should consider any

---

[20]     *See* D.E. 55-1.
[21]     *See* D.E. 31.

facts that reflect an intent to abuse the judicial process and purposes of reorganization statutes. *Id.* For example, a court may consider pre-bankruptcy misconduct and other facts indicating that the debtor is not the type of "honest but unfortunate debtors" for whose benefit bankruptcy laws were designed to protect. *See Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 373–74 (2007).

34. "Two questions relevant to the good faith inquiry are: '(1) whether the petition serves a valid bankruptcy purpose, *e.g.,* by preserving a going concern or maximizing the value of the debtor's estate, and (2) whether the petition is filed merely to obtain a tactical litigation advantage.'" *See In re On the Ocean, Inc.*, 16-16204-BKC-RBR, 2016 WL 8539791, at *2 (Bankr. S.D. Fla. June 6, 2016) (citations omitted).

35. In this case, the Debtor cannot prove that it has proceeded in good faith. A party misuses the Bankruptcy Code and acts in bad faith when it commences a bankruptcy case to relitigate issues resolved in prior state court proceedings in a manner adverse to it, and thereby create an alternate litigation forum. *See In re Quartz Hill Mining, LLC*, 14-15419-BKC-AJC, 2014 WL 8381311, at *4 (Bankr. S.D. Fla. Aug. 4, 2014) (dismissing Chapter 11 case filed to avoid having to post state court *supersedeas* bond); *In re Gooding*, 234 B.R. 157, 159 (Bankr. M.D. Fla. 1999). A party also acts in bad faith when it commences a bankruptcy case to try to take control of a company or its assets. *See In re Taberna Preferred Funding IV, Ltd.*, 594 B.R. 576, 601 (Bankr. S.D.N.Y. 2018).

36. The Debtor and the Insider filed the State Court Action to try to validate the Insider's contested exercise of control over the Debtor and recover a proper prior distribution. That action was dismissed with prejudice as the court held that any such claims can only be asserted in a Delaware court. The Debtor made an *in judicio* admission of forum-shopping during

a status conference before this Court on February 24, 2022.

37. Also indicative of the Debtor's bad faith is its repeated failure to do the bare minimum required properly to advance this bankruptcy case by (a) failing to timely file required financial disclosures, which, when filed, were inconsistent with previous documents filed by the Debtor, (b) failing to file the required case status report, and (c) failing to obtain approval from this Court to employ bankruptcy counsel.

38. Furthermore, the Debtor attempted to seek disqualification of Movants' legal counsel without any legitimate factual basis and has an active frivolous adversary proceeding against the Movants. *In re Evergreen Sec., Ltd.*, 570 F. 3d 1257, 1274 (11th Cir. 2009) ("[C]ontinually advancing groundless and patently frivolous litigation is tantamount to bad faith.") (internal quotation and citation omitted).

39. When a debtor's lack of good faith is shown, the debtor bears the burden of proving that it commenced the bankruptcy case in good faith. *See In re Quartz Hill Mining, LLC*, 14-15419-BKC-AJC, 2014 WL 8381311, at *4 (Bankr. S.D. Fla. Aug. 4, 2014). As stated *supra*, the Debtor here is unable to prove it is proceeding in good faith and the case should be dismissed with prejudice.

40. Sanctions may be properly issued against the Debtor in connection with the Debtor's misconduct. A bankruptcy court has the inherent authority to sanction parties and their counsel for bad faith conduct. *In re Walker*, 532 F.3d 1304, 1309 (11th Cir. 2008). This includes the authority to impose sanctions in connection with a bad faith bankruptcy filing. *See In re: Little Rest Twelve, Inc.*, 662 Fed. Appx. 887, 889 (11th Cir. 2016).

41. Because of the Debtor's bad faith in commencing and prosecuting this Chapter 11 case, cause exists for the Court to enter an award against the Debtor, its counsel, and the Insider,

9

jointly and severally, for the reasonable legal fees and expenses incurred by the Movants in connection with these proceedings.

**WHEREFORE**, the Movants respectfully request that the Court:

A. Dismiss this bankruptcy case, including the adversary proceeding, with prejudice;

B. Reserve jurisdiction to enter an award of legal fees and costs to the Movants against the Debtor, its counsel, and the Insider, jointly and severally, in an amount later to be determined by this Court for the bad faith filing; and

C. Grant such other and further relief as might be deemed just, proper, and equitable.

Dated:  April 14, 2022

/s/ John Schank
David Neal Stern, Esq.
Florida Bar No.: 040398
John Schank, Esq.
Florida Bar No.: 1002828

**FRANK, WEINBERG & BLACK, P.L.**
*Attorneys for Movants*
7805 SW 6th Court
Plantation, FL 33324
(954) 474-8000 (T)
(954) 474-9850 (F)
dnstern@fwblaw.net
jschank@fwblaw.net

10